UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICHAEL GEHRKE and RACHEL SOARES, *Plaintiffs,* )<br><br>v. )<br><br>A/Z CORPORATION, *Defendant/Third-Party Plaintiff,* )<br><br>v. )<br><br>BARNES BUILDINGS AND MANAGEMENT GROUP, INC., *Third-Party Defendant/ Fourth-Party Plaintiff,* )<br><br>v. )<br><br>BRYANT UNIVERSITY; FALCON ASSOCIATES ARCHITECTS, INC.; KEYSTONE CONSTRUCTION CONSULTING, INC.; TURNER BROTHERS, LLC; MATERIAL CONCRETE CORP.; GEISSER ENGINEERING CORP.; C.A. PRETZER ASSOCIATES, INC.; and TAUPER LAND SURVEY, INC., *Fourth-Party Defendants.* )<br><br>and )<br><br>FABRICIO VLADIMIR VIDES QUINTANILLA, ROBERTO RIOS, ROISE RIOS, A.R., R.R.; and A.R., *Plaintiffs,* )<br><br>v. )<br> | C.A. No. 1:18-CV-0511-JJM<br>C.A. No. 1:18-CV-0519-JJM |

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

BARNES BUILDINGS &                          )
MANAGEMENT GROUP, INC.;                      )
A/Z CORPORATION; and BRYANT                  )
UNIVERSITY,                                  )
    *Defendants.*                               )
                                             )
_____      )

## ORDER

Fourth-Party Defendant seeks to dismiss claims for contribution and/or indemnification made by Third-Party Defendant/Fourth-Party Plaintiff. Because there is no dispute indicating that Fourth-Party Defendant had a relevant duty of care, the Court GRANTS Defendant's Motion for Summary Judgment. ECF No. 87.

## FACTS

This matter arises out of the collapse of a partially erected steel building during the construction of an indoor practice facility ("the Project") on the campus of Bryant University ("Bryant"). The Defendant A/Z Corporation ("A/Z"), was the general contractor for the Project, and the Third-Party Defendant Barnes Buildings and Management Group, Inc. ("Barnes") was the subcontractor for the erection of the Project's steel building. ECF No. 90-1 at 2. Bryant hired Keystone Construction Consulting, Inc. ("Keystone"), a Fourth-Party Defendant, to consult on the design and construction of the Project. In 2014, Bryant hired Keystone to "provide consulting services, as may be required by the Project management team at Bryant University, in support of the design and construction" of the Project. *Id.* Keystone did not contract with any other entity involved in the construction.

2

For the Project, Keystone's principle, Ed Ryberg, served as part of the "Bryant University Team" throughout construction, reviewing and analyzing submissions as part of the Project's approval process.   He advised Bryant on various aspects of construction, including vendor procurement, construction scheduling and costs, and exterior and interior design.  *Id.* at 3.  While Mr. Ryberg communicated with other entities in connection with the Project, such direct contact was limited, and he reported to Joshua Rodrigues–Bryant's Project manager.  ECF No. 87 at 4-5.

Work on the Project site began in May 2015, with the placement of concrete forms and pouring of concrete beginning two months later.  ECF No. 90-1 at 4.  But problems arose soon after, and during the week before the collapse of the steel structure, multiple involved parties engaged in dialogue about the problems with the strength of the concrete.  *Id.* at 5.  At the end of August, Geisser Engineering, which tested the concrete for the Project, sent various compression testing results for the concrete to Mr. Rodrigues at Bryant.  Mr. Rodrigues forwarded the testing results to Mr. Ryberg, among others, asking them to review and pay close attention to compression test No. 35.  *Id.*

Mr. Ryberg responded to the email chain by noting that Bryant should ask for batch records from the concrete supplier to ensure the concrete was made in accordance with the mix design.  He also stated: "I think the concrete is being supplied under Turner Brothers contract.  AZ, Turner Brothers, and the concrete supplier should be placed on notice that concrete is not meeting contract requirements." *Id.*

3

On the Friday before the collapse, A/Z was informed about the concerns about the concrete. A/Z noted that this was a "low area of concern" and that "Turner [the concrete supplier] had been put on notice." A/Z has since acknowledged that it did not raise the concrete issues with Barnes because it considered the issue to be one of "low concern." *Id.*

On Tuesday, September 1, 2015, the portion of the steel structure already partially assembled collapsed, injuring several workers.[1] A subsequent OSHA investigation determined Barnes failed to properly secure and brace the partially erected steel building during the erection, which led to the collapse. The construction continued under A/Z's supervision and was ultimately completed the following spring. *Id.* at 10.

Plaintiffs sued in 2018, claiming A/Z's failure to maintain a safe worksite, resulting in the collapse of the steel structure, caused their injuries. A/Z then asserted a third-party complaint against Barnes and sought contribution or indemnification in the event A/Z faced liability. *Id.* at 2. Barnes impleaded eight fourth-party defendants, including Keystone, seeking contribution or indemnification, and alleging their liability contributed in whole or in part to Plaintiffs' injuries. Barnes argues that "[h]ad Keystone brought the low concrete test's results to the attention of Barnes, work on [the Project] could have been and

---

[1] Plaintiff Michael Gehrke was a Barnes employee at the time of his injury, and Plaintiffs Rios and Vides Quintanilla were employees of Metal Bilt, which had been subcontracted for the erection of the metal building by Barnes. ECF No. 87 at 10.

likely would have been halted until adequate remedies and additional safety measures could have been implemented." ECF No. 90-1 at 8.

Keystone now moves for summary judgment pursuant to Fed. R. Civ. P. 56 on the Counts brought against it in the fourth-party complaint (Counts V and VI).

STANDARD OF REVIEW

When making a summary judgment determination, the court must review the entire record and consider the facts and inferences in the light most favorable to the nonmoving party. *Cont'l Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Fed. R. Civ. P. 56(a) dictates that summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A dispute is "genuine" when "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992) (citing *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir. 1992)). If there is a genuine dispute of a material fact, that dispute would "need[ ] to be resolved by a trier of fact." *Doe v. Tr. of Bos. Coll.*, 892 F.3d 67, 79 (1st Cir. 2018) (citing *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)). "Genuine issues of material fact are not the stuff of an opposing party's dreams. On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." *Mesnick*

5

*v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)).

ANALYSIS

Barnes claims that Keystone's negligence contributed to Plaintiffs' injuries. It argues that Keystone was negligent in failing to inform Barnes of the concrete problem so that Barnes could properly investigate the issue and take remedial measures including stopping work on the Project until the issues were investigated, addressed, and resolved. ECF No. 90-1 at 5.

The Rhode Island Uniform Contribution Among Tortfeasors Act, R.I. Gen. Laws § 10-6-1, *et seq.*, defines a "joint tortfeasor" as "two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them[.]" Under the Act, to impose joint liability on multiple tortfeasors, a court must find that: (1) each defendant is "liable in tort" to the plaintiff, meaning that the defendant "negligently contributed to another's injury[;]" and (2) the same injury was caused by defendants who engaged in "common wrongs." *Wilson v. Krasnoff,* 560 A.2d 335, 339 (R.I. 1989).

"A quintessential element of Rhode Island tort law is that '[a] defendant cannot be liable under a negligence theory unless the defendant owes a duty to the plaintiff.'" *Robertson Stephens, Inc. v. Chubb Corp.*, 473 F. Supp. 2d 265, 276 (D.R.I. 2007) (quoting *Benaski v. Weinberg*, 899 A.2d 499, 502 (R.I. 2006)). "A legal duty is a question of law that the court alone is authorized to determine." *Martin v. Marciano,*

871 A.2d 911, 915 (R.I. 2005) (quoting *Volpe v. Gallagher*, 821 A.2d 699, 705 (R.I. 2003)). Courts are to make such a determination by considering "all relevant factors, including the relationship between the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and the foreseeability of harm to the plaintiff." *Id.* (citations omitted).

In its Motion for Summary Judgment, Keystone persuasively argues that it did not owe any duty to ensure Plaintiffs' safety on the worksite of the Project. ECF No. 87 at 7. While Barnes shows Keystone's involvement in a range of aspects of the Project, it fails to show that Keystone had any responsibility for the safety of the worksite. ECF No. 90-1 at 3-4. Much of Barnes' argument turns on the relationship between Keystone and Barnes, as it cites extensively to the opinion of the Supreme Court of Rhode Island in *Forte Bros. Inc. v. National Amusement, Inc.*, 525 A.2d 1301 (R.I. 1987). ECF No. 90-1 at 10-11. In *Forte*, the court held that the duty of care of a supervising architect extends to contractors who share an economic relationship and community of interest on the project. *Forte*, 525 A.2d at 1303.

In *Forte*, however, the court was confronting the issue of "whether a third-party general contractor who may foreseeably be injured or suffer an economic loss proximately caused by the negligent performance of a contractual duty by an architect/site engineer . . . has a cause of action in negligence . . . notwithstanding an absence of privity." *Id.* at 1302. The court found a duty of care, noting that "[t]he duty is based on circumstances establishing a direct and reasonable reliance by the

7

contractor on the contractual performance of the architect when the architect knows, or should have known, of that reliance." *Id.*

Observing the relationship between the parties, Keystone did not simply lack privity with Barnes (or any entity other than Bryant); rather, Barnes presents little indicating direct and reasonable reliance on Keystone regarding worksite safety. Throughout the Project Keystone had little to no interaction with Barnes or the Plaintiffs, interacting mainly with Mr. Rodrigues of Bryant instead.   ECF No. 87 at 11-12.  Further, Keystone's contract with Bryant did not reference safety, and A/Z, by its own admission, was the entity brought on to the Project specifically to ensure a safe worksite. *Id.*

Barnes maintains that Mr. Ryberg still had a duty to ensure that Barnes was informed of the concrete issues.  Under this reasoning, Mr. Ryberg's suggestion that the general contractor and concrete supplier be placed on notice regarding the concrete was inadequate.  ECF No. 90-1 at 8.  The Court disagrees.  While the harm to the Plaintiffs may have been foreseeable, Mr. Ryberg's response–calling for the party responsible for safety (A/Z) to be alerted–seems appropriate.  Requiring more of him would impose an unreasonable obligation upon Keystone, an entity that was not responsible for safety oversight and had effectively no relationship with Barnes and the Plaintiffs.  Sound public policy counsels against imposing such a broad duty and obligation. *See Fisher v. M. Spinelli & Sons Co.*, No. 97-4016, 1999 WL 165674, at *3 n.2 (Mass. Super. Feb. 9, 1999) (citing cases from at least ten other jurisdictions under the principle that an entity does not owe a duty to subcontractor employees

injured at a work site where the entity was not responsible for the means, method, and safety of the construction project).

With no duty of care, Keystone may not be held liable for the Plaintiffs' injuries and no reasonable factfinder could find for Barnes on the relevant Counts. Thus, Barnes' claims against Keystone for contribution and indemnification fail as a matter of law.

## CONCLUSION

Bryant hired Keystone to consult on the construction of the Project, and Keystone did not breach any relevant duties while doing so. As unfortunate as the worksite accidents were, they did not result from a breach of a duty on the part of Keystone. The Court GRANTS summary judgment to Keystone Constructing Consulting, Inc. ECF No. 87.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

October 30, 2020